IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVAD TREW,<br><br>    Plaintiff,<br><br>  v.<br><br>INTERNATIONAL GAME FISH ASSOCIATION, INC., and DOES 1 through 20,<br><br>    Defendants.<br>_____/ | No. C 05-2420 CW<br><br>ORDER GRANTING MOTION TO DISMISS |

    Defendant International Game Fish Association, Inc., (IGFA) moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the first amended complaint (FAC) filed by Plaintiff Javad Trew. Plaintiff opposes the motion. The matter was heard on November 18, 2005. Having considered the papers filed by the parties and oral argument on the motion, the Court grants Defendants' motion to dismiss without prejudice to refiling in State court.

BACKGROUND

    Plaintiff's complaint and the attached exhibits allege the following. On or about March 29, 2004, Plaintiff submitted a 2004 IGFA World Record Application (Application) for a world record in largemouth bass two-pound tippet fly fishing. He also enclosed a

1  $50.00 check for IGFA membership and the Application processing
2  fee.  On or about April 14, 2004, Plaintiff submitted a 2004
3  Application for a world record in largemouth bass four-pound tippet
4  fly fishing.  He enclosed a $25.00 check for the Application
5  processing fee.  On or about April 28, 2004, Plaintiff submitted a
6  2004 Application for a world record in largemouth bass twenty-pound
7  tippet fly fishing.  He enclosed a $25.00 check for the Application
8  processing fee.  On or about May 23, 2004, Plaintiff submitted a
9  2004 Application for a world record in largemouth bass two-pound
10 line class, rod and reel.  He enclosed a $25.00 check for the
11 Application processing fee.[1]  Plaintiff fulfilled the requirements
12 of the 2004 Applications by signing the accompanying notarized
13 affidavit and submitting evidence such as photographs, samples of
14 his fishing lines and the signed testimony of witnesses to the
15 weighings of his award-sized catches.

16     Each above referenced Application bears the following
17 statements under a section marked "Affidavit":  "I understand that
18 IGFA reserves the right to employ verification procedures.  I agree
19 to be bound by any ruling of the IGFA relative to this
20 application."  FAC Ex. 1-4.  The following information appears at
21 the top of each Application: "Read all IGFA angling rules and world
22 record requirements before completing and signing this application
23 . . . .  This application must be accompanied by line or tippet

---

[1] The dates on the four IGFA applications attached as Plaintiff's exhibits 1 through 4 do not match the submission dates alleged in the complaint.  However, because the date of submission is not in dispute, this discrepancy is irrelevant to the issues discussed below.

2

samples and photographs as specified in the World Record Requirements." FAC Ex. 1-4. The 2004 IGFA "International Angling Rules, Rules for Fishing in Fresh Water, and Rules for Fly Fishing" (World Record Requirements) state that,

> 1. Protested applications or disputed existing records will be referred to the IGFA Executive Committee for review. Its decision will be final. IGFA reserves the right to refuse to consider an application or grant a claim for record application. All IGFA decisions will be based upon the intent of the regulations. . . .
>
> 3. In some instances, an IGFA officer or member of the International Committee or a deputy from a local IGFA member club may be asked to recheck information supplied on a claim. Such action is not to be regarded as doubt of the formal affidavit, but rather as evidence of the extreme care with which IGFA investigates and maintains its records.

Defs.' Mot. to Dismiss Ex. A at 3.[2]

On or about January 18, 2005, IGFA representatives Ray Scott, member of IGFA Board of Trustees, Robert Cramer, President of IGFA and Jason Schratweiser, World Record Administrator of IGFA, telephoned Plaintiff and requested that he take a polygraph test to verify the information in his submitted Applications. Scott told Plaintiff that Scott would use Plaintiff for endorsements and that

---

[2] Plaintiff argues that Defendant's motion to dismiss should be treated as a motion for summary judgment because Defendant submitted material outside the pleadings. Defendant argues that when a complaint quotes selectively from a document, the court may consider the full text of the document without converting the motion into one for summary judgment. A court may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds in Galbraith v. County of Santa Clara, 307 F.3d 1119, 1127 (9th Cir. 2002). Because the complaint expressly refers to the 2004 World Record Requirements, Defendant's attachment of these requirements is not outside the pleadings and, therefore, the Court will not treat Defendant's motion to dismiss as a summary judgment motion.

3

Plaintiff's awards would be "worth a lot of money." Plaintiff refused IGFA representatives' request to take a polygraph test. Defendant did not award Plaintiff any world records.

Plaintiff sues Defendant for breach of contract, alleging that Defendant failed and neglected to perform the agreement by refusing to award the world records to Plaintiff even though he complied with all 2004 IGFA rules and requirements. He seeks general damages according to proof and damages of loss of property, loss of income and loss of profits, all according to proof. In addition, Plaintiff alleges that there is an actual controversy between Plaintiff and Defendant as to whether Plaintiff must undergo a polygraph test to be awarded his world records. He seeks declaratory relief for this bona fide dispute under Title 28 U.S.C. § 2201 and Federal Rules of Civil Procedure 8(a), and 57. Finally, Plaintiff demands judgment requiring Defendant to perform the agreement and officially award Plaintiff the four world records, retroactive to the dates of the Applications.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim will be denied unless it appears that the plaintiff can prove no set of facts which would entitle it to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Fidelity Fin. Corp. v. Fed. Home Loan Bank of S.F., 792 F.2d 1432, 1435 (9th Cir. 1986). All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). Although the court is generally confined to consideration of the allegations in the

4

pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). A court may consider documents which are not expressly incorporated into the complaint, but "upon which the plaintiff's complaint necessarily relies." Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998).

Dismissal of a complaint can be based on either the lack of a cognizable legal theory or the lack of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). When granting a motion to dismiss, a court is generally required to grant a plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, a court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

## DISCUSSION

Defendant argues that Plaintiff's contract claim fails because the Application is not an agreement manifesting mutual assent. Defendant further argues that even if the Application is treated as a contract, Defendant has properly complied with its terms. Plaintiff contends that the Applications are judicially enforceable

5

contracts because they were written offers by Defendant, which Plaintiff accepted, and the $25.00 Application fee was his consideration for the contract. Pl.'s Opp'n at 12. As such, Plaintiff equates Defendant's refusal to award him the world records to a breach of contractual obligations.

Whether parties have mutually assented to enter into a contractual relationship is determined with reference to an objective standard. Zurich General Accident & Liability Assurance Co. Ltd. v. Industrial Accident Commission, 132 Cal. App. 101, 103-04 (1933). The outward manifestations or expressions of consent to a contract are controlling; mutual assent is gathered from the reasonable meanings of the words and acts of the parties, not their unexpressed intentions or understandings. Mercer County Sheriff's Employees' Assoc. v. County of Merced, 188 Cal. App. 3d 662, 670 (1987).

The reasonable meaning of the language in the Applications and in the 2004 World Record Requirements fails to establish that Defendant agreed to award Plaintiff his world records upon submission of the Applications, the processing fees and supporting evidence. Instead, this language merely states that Defendant agrees to review the completed Applications to determine whether or not a world record has been accomplished and to "employ verification procedures" to ensure the accuracy of information contained therein. This language is sufficient to undermine Plaintiff's contention that the Applications are contracts manifesting mutual assent to award Plaintiff the world records. Although Defendant's argument that "applications are not

6

contracts," Defs.' Mot. to Dismiss at 3, is over-broad, see, e.g., Treister v. American Academy of Orthopaedic Surgeons, 396 N.E.2d 1225, 1233 (Ill. 1979)(finding that complaint properly alleged contract between the parties which was formed in connection with the application plaintiff had submitted to defendant), the Applications at issue here do not constitute a contract because of the absence of mutual assent.

Even if the Applications are treated as contracts, Plaintiff fails to state that Defendant has breached them. Plaintiff alleges that Defendant was contractually obliged to award him the world records subject to the rules and requirements of the 2004 Application and the 2004 World Record Requirements. This is all that Defendant promised and it delivered on its promise by requesting a polygraph test to determine the authenticity of Plaintiff's statements in the Applications before awarding the world records. In doing so, Defendant complied with the directions on the Application to verify world record claims using "verification procedures." FAC Ex. 1-4. Plaintiff consented to Defendant's use of verification procedures and the result thereof when he agreed "to be bound by any ruling of the IGFA relative to this application." FAC Ex. 1-4. Thus, based on the language in the Application and the World Record Requirements, the FAC fails to allege a cause of action for breach of contract.

Plaintiff argues that the term "verification procedures" in the Application is unenforceable because it is vague, ambiguous and insufficiently definite. Under California law, when a contract "is so uncertain and indefinite that the intention of the parties in

7

1  material particulars cannot be ascertained, the contract is void
2  and unenforceable."  <u>Robinson & Wilson, Inc. v. Stone</u>, 35 Cal. App.
3  3d 396, 407 (1973).  To be enforceable, a contract must be definite
4  enough that a court can determine both the scope of the duties and
5  the limits of performance involved in the contract, such that it
6  has a rational basis for assessing damages.  <u>Id.</u>  The language of
7  the Application is unambiguous and expressly reserves Defendant's
8  right to employ verification procedures to test the truth of the
9  claims.  Therefore, the phrase "verification procedures" is
10 enforceable.

11     Plaintiff further asserts that the overriding issue in this
12 case is whether Defendant could require him to take a polygraph to
13 verify the Applications.  Nothing in the 2004 Application and the
14 2004 World Record Requirements limits the verification procedures
15 available to Defendant.  Contrary to Plaintiff's claim, there is no
16 need for this Court to consider the "admissibility" of a polygraph
17 test because Plaintiff never took this test and such a test is not
18 being submitted as evidence.

19     Therefore, in the absence of a contract or the breach thereof,
20 Plaintiff cannot state a claim for relief.  For this reason, the
21 Court grants Defendant's motion to dismiss with leave to amend.  At
22 the November 18, 2005 hearing, the Court stated that if Plaintiff
23 chose to file an amended complaint, he must make allegations that
24 indicate that this Court has subject matter jurisdiction and that
25 if he claims jurisdiction based on diversity of citizenship, he
26 must allege facts indicating that he could be awarded more than

$75,000 in damages pursuant to 28 U.S.C. § 1332(a)(1).[3]  See McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936)(party invoking jurisdiction bears burden of establishing good faith expectation of recovery of at least the jurisdictional amount).  At the hearing, the Court indicated that if Plaintiff chose to file an amended complaint, he must do so within two weeks from the date of the hearing.

More than two weeks have passed since the date of the hearing and Plaintiff has not filed an amended complaint.  Therefore, this case is dismissed without prejudice to refiling in State court.

CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's complaint (Docket no. 13) is GRANTED.  The complaint is dismissed without prejudice to refiling in State court.

IT IS SO ORDERED.

Dated: 12/13/05

_____
CLAUDIA WILKEN
United States District Judge

---

[3] District courts have original jurisdiction over all civil actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a)(1).